UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DUANE ZIEMBA,                         :
                                      :
     Plaintiff,                       :
                                      :
     v.                               :          CASE NO. 3:98CV2370(DFM)
                                      :
GEORGE WEZNER, ET AL.,                :
                                      :
     Defendants.                      :

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, a Connecticut inmate, brings this action pursuant to 42 U.S.C. § 1983 against the former Commissioner of the Connecticut Department of Correction John Armstrong and various employees of the Cheshire Correctional Institution.[1] The plaintiff alleges that in violation of his constitutional rights the defendants failed to protect him from attack by his cell mate, denied him medical care and used excessive force. In addition to his federal claims, the plaintiff asserts state law claims of assault and battery. Pending before the court are the defendants' motion for summary judgment and motion for an evidentiary hearing. (Doc. #105, 117.) The defendants argue that the plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In the alternative, the defendants argue that the claims against the defendant Armstrong should be dismissed because the plaintiff has

_____

[1]Although at one point in this litigation the plaintiff was represented by counsel, he currently is appearing pro se. See doc. #116.

failed to demonstrate his personal involvement.

I.   Procedural Background

This case is before the court on remand from the United States Court of Appeals for the Second Circuit.  In October 2002, the district court granted the defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) based on the plaintiff's failure to exhaust his administrative remedies and dismissed the case.  The plaintiff appealed the decision.  On appeal, the plaintiff argued, inter alia, that prison officials prevented him from exhausting his administrative remedies by beating him, threatening him, denying him grievance forms and writing implements and transferring him to another correctional facility.  On April 23, 2004, the Court of Appeals vacated the decision of the district court and remanded the case.  Ziemba v. Wezner, et al., 366 F.3d 161 (2d Cir. 2004).  The Second Circuit held as a matter of first impression that the conduct of prison officials may estop them from asserting the defense of non-exhaustion.  Id. at 163.  The Court instructed that "[o]n remand, the district court is directed to consider Ziemba's claim that estoppel bars the State's assertion of the exhaustion defense. Because such consideration will require the court to look beyond the pleadings and the documents attached to the pleadings, the district court must allow factual development and address the estoppel claim at the summary judgment stage."  Id. at 164.

The defendants subsequently filed the instant motions.

II.  Facts[2]

In September 1997, the plaintiff was an inmate at the Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut.  On September 3, 1997, the plaintiff filed a Level 1 emergency grievance requesting that prison officials immediately move him away from his cell mate, Patrick Wright, because Wright had threatened him and kept weapons in his cell.  (Doc. #80, ex. A.) The plaintiff's grievance further stated that he made several requests of defendant Captain Muccino to be relocated to a different cell but defendant Muccino refused to move the plaintiff. Notwithstanding the plaintiff's grievance, the plaintiff's cell assignment was not changed.  On September 9, 1997, the plaintiff and Wright were involved in an altercation.  (Defs' Local Rule 56(a)(1) Statement ¶5 [admitted].)  The plaintiff alleges that Wright attacked and stabbed him.  (Compl. ¶17.)  It is undisputed that the plaintiff was placed in segregation.  (Answer ¶12.)  The plaintiff alleges that he repeatedly requested, but was denied, medical care for injuries he received from his cell mate.  (Compl. ¶19.)  He further alleges that on September 10, 1997, he was taken to state court for a scheduled court date but court officials would not permit him to appear because of his "shocking" condition. (Compl. ¶20.)  The plaintiff was returned to segregation.  On

_____

[2]The facts are undisputed unless otherwise indicated.

September 12, 1997, the plaintiff was taken from segregation to the shower room.  The plaintiff alleges that, while there, correctional officers threatened him and intimidated him with police dogs. (Compl. ¶¶22-23.)  It is undisputed that a cell extraction team removed the plaintiff from the shower room and that correctional officers used pepper mace.  (Answer ¶15.) The plaintiff was placed in four-point restraints.  That evening, he was transferred to Northern Correctional Institution ("Northern") where he received medical attention.  (Answer ¶18.)

On September 18, 1997, the plaintiff's mother telephoned the FBI.  She subsequently sent the FBI a letter in which she stated that correctional officers at Cheshire had beaten the plaintiff and denied him medical care and requested that the FBI conduct an investigation.  (Doc. #80, ex. D.)

III. Legal Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in

favor of, the non-movant.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  "Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion."  Bedor v. Friendly's Ice Cream Corp., 392 F. Supp. 2d 367, 374 (D. Conn. 2005).  Where, as here, the plaintiff proceeds pro se, the court is obliged to construe his pleadings liberally and interpret them to raise the strongest arguments that they suggest.  See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  Although a pro se plaintiff is entitled to special latitude, he must establish more than merely "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

IV.  Discussion

The defendants move for summary judgment on the ground that the plaintiff did not exhaust his administrative remedies.[3]  They argue that they are not estopped from raising non-exhaustion as an affirmative defense.

"The PLRA provides that a prisoner may not proceed under Section 1983 'until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a)."  Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005).  The Connecticut Department of Correction ("DOC") has a multi-level inmate grievance procedure that is set forth in Administrative Directive 9.6.  See Doc. #82, ex. C.  Under

---

[3]This is the sole basis of their summary judgment motion.

the inmate grievance procedure, an inmate may file an "Emergency Grievance" to which the DOC must respond within eight hours and follow up with a written response within three business days.  Id. at ¶18(C).  An inmate may file a non-emergency Level 1 grievance "within 30 days of the occurrence or discovery of the cause of the grievance."  Id. at ¶10.  The DOC is required to respond in writing to a Level 1 grievance within 30 days.  Id. at ¶15.  The inmate is notified of the disposition and is provided with directions for appealing to Level 2.  Id.  An inmate may appeal the decision within 5 calendar days of receiving the decision.  Id. at ¶16.  In addition, the inmate may appeal to Level 2 if he does not receive a "timely response" to his grievance.  Id. at ¶16.

Although the PLRA's exhaustion requirement is mandatory, "certain caveats apply."  Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004).  It is "now well-settled in this circuit that exhaustion under the PLRA is not jurisdictional . . . and that it is an affirmative defense. . . ."  Ziemba v. Wezner, et al., 366 F.3d 163 (2d Cir. 2004)(citations omitted).  Subsequent to its decision in Ziemba, the Second Circuit decided Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) in which it set forth a framework for analyzing contentions that an inmate failed to exhaust administrative remedies.  First, "[d]epending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact 'available'

to the prisoner."  Id.  Second, the court should "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise it or preserve it," or "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  Id. Finally, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."  Id. (internal quotation marks omitted.)

The defendants argue that even if the plaintiff's allegations are true -- i.e., that he was "placed in a stripped segregation cell and denied access to all writing material and administrative grievances" -- he "only asserts a viable argument that he was prevented from filing a grievance for three days, from September 9, 1997 to September 12, 1997."  (Doc. #106, Defs' Mem. in Supp. at 8.)  Under the inmate grievance procedure, an inmate has 30 days from an incident in which to file a grievance.  The defendants argue that the plaintiff had ample time -- 30 days from the September 9 and September 12, 1997 incidents of which he complains -- in which to file a grievance and that there are no allegations that the plaintiff was constrained in any manner from filing grievances after September 12.

The plaintiff responds that the defendants are estopped from asserting a defense of non-exhaustion and that, in any event, he

7

exhausted his administrative remedies.  (Doc. #113, Pl's Mtn in Opp'n.)  In support of the latter claim, the plaintiff submitted an affidavit and attached copies of grievances dated September 15, 1997 and September 18, 1997 that he filed while at Northern concerning the incidents at Cheshire.  (Doc. #115.)  Both grievances, the plaintiff avers, were not processed by prison officials and were returned to him. (Pl's Aff. ¶3.)  He was unable to appeal because the inmate grievance procedure provides that a grievance returned without disposition may not be appealed. (Pl's Aff. ¶3;  Administrative Directive 9.6 at ¶12.)  In the September 15, 1997 grievance, the plaintiff states: "The lawyers at Inmate Legal Assistance Program told me that I must file this grievance. At Cheshire CI on 9-9-97 my cell partner stabbed me because Captain refused to move me away from him.  Then they denied me medical care for stab wound and threatened and beat me in the shower room." (Pl's Aff., ex. B.)  He further states that "they have me here to cover up."  (Id.)  As relief, the plaintiff requests that he be provided medical care, that an investigation be commenced and that he be "moved out of here."  (Id.)  According to the plaintiff, officials at Northern refused to process the grievance and returned it to him.  (Pl's Aff. ¶2.)  The document, which bears a receipt date of September 16, 1997, states that it was being returned because inmates are "not permitted to file grievances relating to another facility."  The second grievance the plaintiff proffered in opposition to the defendants' motion is dated September 18, 1997.

8

In this grievance, the plaintiff complains that his prior grievance dated September 15, 1997 regarding incidents at Cheshire was not processed.[4]  A date stamp indicates that the grievance was received on September 22, 1997.  A notation on the document states that it is being returned because the plaintiff is not permitted to file grievances that occurred at another facility.  (Pl's Aff. ¶2, ex. C.)  The plaintiff argues that, in light of the grievances he filed coupled with the lack of appealability, he exhausted administrative remedies.

The defendants, in their reply brief, point out that the plaintiff previously did not present these grievances and challenge their authenticity.[5]  (Doc. #119, Defs' Reply Br. at 1.)  They request that the court conduct an evidentiary hearing on the issue in which they claim they will "demonstrate that the documents presented by the plaintiff are forgeries."  (Doc. #119, Defs' Reply Br. at 1; doc. #117, Defs' Request for Evidentiary Hrg at 3.)  In support of their request, the defendants contend that "when a fact-bound jurisdictional question arises, courts possess considerable

---

[4]The grievance states:  "My grievance on this same matter dated 9-15-97 was just returned and on it you state it won't be processed.  You have to process it and this Legal Assistance told me.  At Cheshire CI on 9-9-97 I was stabbed, then denied medical care, then beaten and assaulted, all in retaliation and unlawfully. I am seriously hurt. You must process this grievance and my grievance dated 9-15-97.  Please investigate facts, call State police for me.  Move me out of here.  I did nothing wrong."

[5]According to the plaintiff, when the Fed. R. Civ. P. 12(c) motion was filed in 2002, he was confined in Nevada.  His attorney, who was located in Connecticut, did not have the entire case file and evidence.  (Pl's Aff. ¶4.)

discretion in hearing evidence and weighing the proof."   (Doc.

#117, Defs' Request for Evidentiary Hrg at 4.)   The court does not

dispute this proposition.   It is, however, not applicable in this

case because exhaustion under the PLRA is not jurisdictional.[6]

"When ruling on a motion for summary judgment, the court must

respect the province of the jury."   Hellman v. Gugliotti, 279 F.

Supp. 2d 150, 153 (D. Conn. 2003).   "The trial court's task is

"carefully limited to discerning whether there are any genuine

issues of material fact to be tried, not to deciding them. Its

duty, in short, is confined to issue-finding; it does not extend to

issue-resolution."  Gallo v. Prudential Residential Services, Ltd.

P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).   As indicated by the

defendants' very request, a genuine issue of material fact exists

regarding whether the plaintiff exhausted his administrative

remedies.   Where, as here, genuine issues of material fact exist,

summary judgment must be denied.   See McCullough v. Burroughs, No.

___

[6]Accordingly the cases cited by the defendants for this proposition are inapposite.  Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) ("[T]he court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction."); Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994) (court may hold an evidentiary hearing to resolve a motion to dismiss based on subject matter jurisdiction).   As support for their request, the defendants offer Crawford v. Braun, No. 99 CIV. 5851, 2002 WL 31426262 (S.D.N.Y. Oct. 28, 2002), a PLRA case.   In that case, the district court found that genuine issues of material fact precluded granting summary judgment on the defendants' claim of non-exhaustion.   The court stated that exhaustion was a "threshold question" and referred the issue to a magistrate judge for a hearing.  Crawford stands alone in this circuit in its use of this procedural vehicle.   This court is not persuaded that an evidentiary hearing is appropriate under these circumstances.

04CV3216, 2005 WL 3164248, at *3 (E.D.N.Y. Nov. 29, 2005) (denying summary judgment where genuine issues of material facts exist as to whether grievance procedures were available and whether defendants are estopped from raising exhaustion as defense).

The defendants argue, in the alternative, that summary judgment should enter as to the defendant Armstrong because he lacks the requisite personal involvement to sustain the claims. (Doc. #106, Defs' Mem. in Supp. at 13.)  The plaintiff does not object to this aspect of the defendants' motion.  (Doc. #113, Pl's Mem. in Opp'n at 3.)  Accordingly, the defendants' motion for summary judgment as to defendant Armstrong is granted.

V.   Conclusion

For these reasons, the defendants' motion for summary judgment (doc. #105) is denied in part and granted in part.  The defendants' motion for summary judgment on the grounds of exhaustion is denied. The defendants' motion for summary judgment as to defendant Armstrong is granted.  The defendants' motion for an evidentiary hearing (doc. #117) is denied.

SO ORDERED at Hartford, Connecticut this 31st day of March, 2006.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

11